12 PAGES
WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Kraig C. Kilger, State Bar No. 162593
kkilger@wgllp.com
Hutchison B. Meltzer, State Bar No. 217166
hmeltzer@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone: (714) 966-1000
Facsimile: (714) 966-1002

Proposed General Insolvency Counsel for Debtor
Virginia Street Investors,
a California general partnership

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>VIRGINIA STREET INVESTORS, (VSI),<br>a California general partnership,<br><br>Debtor. | Case No. 2:09-bk-33572-CK<br><br>Chapter 11 Case<br><br>DCN:WGS-1<br><br>DATE: July 29, 2009<br>TIME: 1:30 p.m.<br>DEPT: C |

## MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c) THROUGH OCTOBER 31, 2009 AND REQUIRING POST-PETITION RENTS TO BE PAID TO THE DEBTOR

Virginia Street Investors, a California general partnership (the "Debtor"), debtor and debtor-in-possession in the above captioned case, submits this Motion for Order Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c) Through October 31, 2009 and Requiring Post-Petition Rents to be Paid to the Debtor (the "Motion", and the concurrently filed Declarations of David Hanson and Greg Stowe in support, and respectfully represents as follows:

306559.1     CASH COLLATERAL MOTION

## I. INTRODUCTION

By this Motion, the Debtor requests the use of cash collateral through October 31, 2009 in order to pay the necessary expenses associated with the maintenance and management of the Property. The interests of the secured creditor are protected with respect to the proposed use of cash collateral because new rent is being generated, adequate protection payments will be made, and the secured creditor will receive replacement liens. The proposed use of cash collateral is necessary to preserve the value of the Property, continue essential services to residents, and maximize the value of the estate.

## II. FACTUAL BACKGROUND

### A. The Debtor and the Property

Virginia Street Investors (the "Debtor" or "Virginia Street"), a California general partnership, was formed on December 1, 2003, for the purpose of developing and selling a ten-unit condominium project located at 802-822 S. 2nd Street, San Jose, CA, 95112 (the "Property"). The Property was successfully completed and ready for occupancy in or about January, 2009. The Property is comprised of 10 units, designed in the highly desirable mixed-use, urban-luxury style, including live-work units, condominiums, and townhomes.

Due to the state of the real estate market, the Debtor elected to lease the individual units until the sales market improves. The Debtor was successful in this regard and the Property currently generates a gross monthly rental income in excess of $26,000.00. The Property has been managed by an independent property manager, Sequoia Group ("Sequoia") since March 13, 2009.

### B. The Secured Debt

In order to develop the Property, on July 24, 2006, the Debtor obtained a construction loan from Bridge Bank, N.A. ("Bridge Bank") with an original principal amount of $4,921,000.00 (the "Loan") secured by the Property and an assignment of rents from the Property. Pursuant to certain extensions executed between the Debtor and Bridge, a

balloon payment was due on January 24, 2009. As discussed above, due to the state of the real estate market, the Debtor did not sell the units and is leasing them. Accordingly, the Debtor did not have sufficient funds to timely make the balloon payment.

The Debtor was not able to negotiate an additional extension agreement with Bridge Bank. On March 18, 2009, Bridge Bank filed a complaint in Santa Clara County Superior Court, Case No. 109CV137566, for judicial foreclosure and appointment of a receiver against the Property. The Debtor filed a demurrer and motion to strike, which were still pending as of the Petition Date. On June 11, 2009, in an apparent exercise of its rights under the Assignment of Rents clause, Bridge Bank executed and served upon the Property's tenants a demand for future rents to be paid directly to Bridge Bank pursuant to California Civil Code Section 2938 ("Demand").

### C. The Commencement of the Bankruptcy Case

In order to maximize value for all of the Debtor's creditors and parties in interest, on June 30, 2009, the Debtor filed a voluntary petition for relief under chapter 11.

## III. PROPOSED TERMS OF CASH COLLATERAL USE AND DISCLOSURES REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001

The Debtor makes the following disclosures with respect to the proposed use of cash collateral:

1. The only entity known by the Debtor with an interest in cash collateral is Bridge Bank.
2. The purpose of the use of cash collateral is to make the minimum expenditures required to operate, protect, and maintain the Debtor's real property and to prevent a decline in value due to neglect in accordance with the proposed budget attached as Exhibit "1" to the Declaration of Greg Stowe (the "Budget").

3. The terms, including duration, of the use of cash collateral are as follows: the Debtor seeks authority to use cash collateral in accordance with the Budget through and including October 31, 2009, with expenditures during this period not to exceed 110% of the aggregate expenditures set forth in the Budget, *i.e.*, a 10% variance.

4. Bridge Bank will receive perfected replacement liens, in accordance with its priority, in the Debtor's post-petition assets and the proceeds thereof, to the same extent, validity, and priority as the liens held by Bridge as of the Petition Date (not including, for example, proceeds of avoidance actions), limited to the amount of any cash collateral as of the Petition Date, to the extent cash collateral is actually used by the Debtor, and monthly adequate protection payments in an amount equal to $586.23 per diem.

5. During the proposed cash collateral period, Bridge will receive interest payments at the non-default contract rate of 5%.

6. The Debtor will provide Bridge with the monthly report prepared by Sequoia and copies of the monthly operating reports.

Further, notwithstanding the Assignment of Rents and the Demand, all post-petition rent payments shall be made by the tenants to the Debtor, through Debtor's property manager, Sequoia.

As required by Federal Rule of Bankruptcy Procedure ("FRBP") 4001(b) a copy of the proposed form of order (the "Proposed Order") is attached to the Motion as Exhibit "2."

## IV. CASH COLLATERAL USE SHOULD BE AUTHORIZED ON THE PROPOSED TERMS

### A. Bridge's Interests Are Adequately Protected

Section 363(c) provides that a trustee or debtor-in-possession may not use cash collateral, unless secured parties consent, or the court, after notice and a hearing, authorizes the proposed use. *See* 11 U.S.C. § 363(c). A bankruptcy court may authorize

a debtor's use of cash collateral with the consent of a secured creditor provided the secured creditor's interest in such cash collateral is adequately protected. *See* 11 U.S.C. § 363(c), (e); *see also In re Zeeway Corp.*, 71 B.R. 210, 211 (B.A.P. 9th Cir. 1987). However, a secured creditor is entitled to adequate protection only from the decline in value of its collateral package post-petition. *See In re Timbers of Inwood Forest*, 484 U.S. 365, 633 (1988); *see also In re Weinstein*, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998) ("[T]he amount by which the collateral depreciates is the amount of adequate protection to which the secured creditor is entitled."). "However, the protection afforded to secured creditors is not absolute." *In re ProAlert, LLC*, 314 B.R. 436, 441 (B.A.P. 9th Cir. 2004).

Where, as here, cash collateral is used to maintain real property, the interests of secured creditors with liens on the real property as well as cash collateral, are adequately protected, even if the secured creditor was undersecured (*i.e.*, no equity cushion), which it is not. *See In re Donato*, 170 B.R. 247, 256 (Bankr. D. N.J. 1994) ("The use of cash collateral to pay the operating expenses of the real property in question adequately protects the interest of secured lenders, however, even where the creditor is undersecured."); *see also In re Pine Lake Village Apartment Co.*, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) ("Manifestly, the application of the rent income solely to maintain and repair the property so as to prevent further deterioration will enhance the value of the property which serves as the collateral for the plaintiff-mortgagee's claim. The protection and maintenance of the plaintiff-mortgagee's collateral, without any diversion of funds to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected."); *In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) ("A secured creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance.").

Secured creditors are also adequately protected where income is being generated and the used cash is replaced by new receipts or rents from operations. As stated by one bankruptcy court:

> With regards to rents, a court must look to the stream of future rents to determine whether adequate protection is required. This is because the lien on each month's rents replaces the lien on the prior month's rents, so there is a replacement lien of equal value under Section 361 of the Bankruptcy Code. Therefore, as long as the debtor generates a continuous income stream, the debtor's use of the rental income does not diminish the value of the collateral. The rationale is that the protected cash proceeds are being used to generate new collateral which will be of at least equivalent value of those replaced. Accordingly, if the underlying collateral is not declining in value, the additional cash collateral may be used by the debtor to pay administrative expenses as well as to maintain and improve the underlying collateral.

*In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) (citations omitted); *see also In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. at 57 (stating that a secured creditor's interest in rent is adequately protected when the rents are reinvested for operational expenses and maintenance because such reinvestment generates additional rents); *In re Ledgemere Land Corporation*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (stating that a secured creditor is adequately protected so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest).

Here, the Debtor is attempting to obtain consent from Bridge for the use of cash collateral on the terms and conditions proposed herein. The Debtor does not believe that the terms that have been proposed by Bridge are necessary, appropriate, or comport with the United States Bankruptcy Court, Eastern District of California Guidelines. However, even if Bridge does not so consent, the proposed use of cash collateral is appropriate and should be authorized because Bridge is adequately protected.

First, the use of cash collateral to pay the necessary and reasonable expenses to preserve and maintain the value of the Property *in and of itself* constitutes adequate protection. The Debtor requests authority to use cash collateral to pay essential expenses, such as, property management, utilities, insurance, and expenses needed to maintain and repair the units. There can be no real dispute that the payment of these expenses are necessary to maximize the value of Bridge's collateral package. Without

the proposed use of cash collateral, utilities will be terminated, insurance will expire, the property manager will quit, tenants will leave (resulting in a decrease in tenant rent), and the value of the Property will likely decrease due to neglect. In contrast, the Debtor's use of cash collateral to operate and maintain the Property prevents deterioration of the Property's' value and, thus, provides adequate protection. See *In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. at 58; see also *In re Pine Lake Village Apartment Co.*, 16 B.R. at 756. The expenses set forth in the Budget are all expenses that Bridge would have to pay if it owned the Property. If these expenses are paid, the value of Bridge's interest in cash collateral will not decline during the cash collateral use period.

Second, Bridge is adequately protected by replacement liens in the Debtor's post-petition rents. The Debtor's proposed use of cash collateral will generate additional rents post-petition of at least equivalent value to those rents used pursuant to the Budget. Therefore, the proposed use of cash collateral will not diminish the value of Bridge's collateral.

Third, Bridge is further protected by the monthly adequate protection payments to Bridge in an amount equal to the non-default rate of interest provided in the loan documents.[1] In fact, these interest payments far outweigh the expenses the Debtor is seeking to pay.

For all these reasons, Bridge is adequately protected, and the proposed use of cash collateral should be approved.[2]

---

[1] The Debtor reserve the right to dispute the amount of the adequate protection payment, including with respect to the principal amount of the loan and the interest rate.

[2] Even under state law, absent a bankruptcy case, Bridge would be required to allow the Debtor to use rents to pay the operating expenses of the Property. See California Civil Code section 2938(g).

306559.1                                    7                    CASH COLLATERAL MOTION

### B. Despite the "Assignment" of Rents and the Demand, the Rents are Cash Collateral Subject to Use by the Debtor Pursuant to U.S.C. § 363(c)

Property rights, including with respect to interests in rents, are determined under state law. *See Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918 (1979) ("Property interests are created and defined by state law.")

Under California law, an assignment of rents is treated as a security interest, not a true assignment, regardless of the language used in the assignment documents. California Civil Code section 2938(a) provides:

> (a) A written assignment of an interest in leases, rents, issues, or profits of real property made in connection with an obligation secured by real property, irrespective of whether the assignment is denoted as absolute, absolute conditioned upon default, additional security for an obligation, or otherwise, shall, upon execution and delivery by the assignor, be effective to create a present security interest in existing and future leases, rents, issues, or profits of that real property. As used in this section, "leases, rents, issues, and profits of real property" includes the cash proceeds thereof. "Cash proceeds" means cash, checks, deposit accounts, and the like.

Accordingly, under California law, despite the "assignment of rents" language, Bridge only has a security interest, and the Debtor maintains an ownership interest, in the rents. Thus, despite the Assignment and the Demand, the rents are cash collateral subject to use by the Debtor pursuant to section 363(c). *See* March, Ahart & Tchaikovsky, CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2007 ("Rutter Group"), CH. 14(I)-C ("Under California law, because rent assignments only create a security interest in rents, the borrower/debtor continues to have an interest in rents postpetition notwithstanding any prepetition enforcement actions by the secured lender (including the appointment of a receiver)"); *In re 5028 Wisconsin Ave. Associates Ltd. Partnership*, 167 B.R. 699, 706 (Bankr. D. Dist. Col. 1994) (Despite an assignment of rents and prepetition demand for tenants to turnover rents to the lender, "the debtor would be entitled to use the cash collateral upon providing the mortgagee adequate protection. Usually, adequate

protection can be accorded the mortgagee by devoting the rents to necessary costs of operating and preserving the building so as to continue generating rents." [District of Columbia law])

The Court may also find that Bridge does not have a security interest on that portion of the rents necessary to maintain the property. *See id.* ("The debtor's use may alternatively be authorized under 11 U.S.C. § 552(b) by limiting the mortgagee's security interest based on the equities of the case to rents net of operating and maintenance expenses."); *In re Cardinal Indus., Inc.* 118 BR 971, 980-98 (Bankr. S.D. Ohio 1990); Rutter Group, CH. 14(I)-C (same).

Accordingly, despite the Demand, the post-petition rents must be paid to the Debtor, through its property manager, Sequoia.

## V. CONCLUSION

For the foregoing reasons, the Court should authorize the use of cash collateral on the terms set forth above on a final basis through October 31, 2009 and order that all rents paid after the Petition Date shall be paid by the tenants to the Debtor through its property manager, Sequoia.

Respectfully submitted,

Dated: July 14, 2009

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP

By: /s/ H.
HUTCHISON B. MELTZER
Proposed General Insolvency Counsel
for Virginia Street Investors, Debtor
and Debtor-in-Possession

**EXHIBIT 2**

WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Kraig C. Kilger, State Bar No. 162593
kkilger@wgllp.com
Hutchison B. Meltzer, State Bar No. 217166
hmeltzer@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone: (714) 966-1000
Facsimile: (714) 966-1002

Proposed General Insolvency Counsel for Debtor
Virginia Street Investors,
a California general partnership

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

In re

VIRGINIA STREET INVESTORS, (VSI),
a California general partnership,

Debtor.

Case No. 2:09-bk-33572-CK

Chapter 11 Case

DCN:WGS-1

DATE: July 29, 2009
TIME: 1:30 p.m.
DEPT: C

### ORDER GRANTING MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c) THROUGH OCTOBER 31, 2009 AND REQUIRING POST-PETITION RENTS TO BE PAID TO THE DEBTOR

On July 29, 2009 at 1:30 p.m. in the above-captioned case, a hearing was held on the Motion for Order Authorizing Use Cash Collateral Pursuant to 11 U.S.C. § 363(c) Through October 31, 2009 and Requiring Post-Petition Rents to be Paid to the Debtor (the "Motion") filed by Virginia Street Investors, the debtor and debtor-in-possession ("Debtors"). Any capitalized terms not defined herein shall have the meaning ascribed to them in the Motion. Appearances were as noted on the record.

314658.1                                    CASH COLLATERAL MOTION

EXHIBIT 2 PAGE 10

Having considered the Motion, and all papers submitted in support thereof and any opposition thereto, and finding that notice and service were proper and good cause therefor,

**IT IS HEREBY ORDERED** that:

1. The Motion is granted.

2. The Debtor is authorized to use cash collateral through and including October 31, 2009 pursuant to the budget attached as Exhibit "1" to this Order ("Budget"). Expenditures during the period covered by the Budget are not to exceed 110% of the aggregate expenditures set forth in the Budget (*i.e.*, a 10% variance).

3. To provide adequate protection, Bridge shall have replacement liens, in accordance with its pre-petition priority, in the Debtor's post-petition assets and the proceeds thereof, to the same extent, validity, and priority as the lien held by the Bridge as of the petition date (not including, for example, a lien on avoidance action proceeds). To the extent that cash is available, the Debtor shall make monthly payments to Bridge set forth in the Budget. Each month, the Debtor shall provide Bridge with the monthly reports prepared by Sequoia and with copies of the monthly operating reports submitted to the Office of the United States Trustee.

4. Notwithstanding the Demand, all rents paid by after the Petition Date shall be paid by the tenants to the Debtor, not Bridge, through its property manager, Sequoia Group. The Debtor is authorized to take all necessary and appropriate action to give effect to this provision.

Dated: _____

Hon. Christoper M. Klein
United States Bankruptcy Court

314658.1

EXHIBIT 2 PAGE 11

CASH COLLATERAL ORDER